SIGNED THIS: September 10, 2014

_____
**Thomas L. Perkins
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JUAN C. PALET ALVARADO, | ) | No.  13-81267 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| JEANA K. REINBOLD, as Chapter 7 Trustee for the Estate of Juan C. Palet Alvarado, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 14-8019 |
| | ) | |
| WELLS FARGO BANK, N.A. d/b/a Wells Fargo Dealer Services, Inc., | ) ) | |
| | ) | |
| Defendant. | ) | |

**O P I N I O N**

This matter is before the Court on cross motions for summary judgment filed by the Plaintiff, Jeana K. Reinbold (TRUSTEE), as Chapter 7 Trustee for the estate of the Debtor, Juan C. Palet Alvarado (DEBTOR), and Wells Fargo Bank, N.A. d/b/a Wells Fargo Dealer Services, Inc. (WELLS FARGO), as Defendant, on the TRUSTEE'S complaint to avoid the

lien claimed by WELLS FARGO under section 544 of the Bankruptcy Code and to recover payments made by the DEBTOR within ninety days of the filing of the petition under section 547. The issue before the Court is whether WELLS FARGO has a perfected security interest in the DEBTOR'S vehicle even though the lienholder is identified on the certificate of title by its former corporate name.

The basic facts are not controverted. On July 6, 2008, while residing in California, the DEBTOR executed a retail installment contract with Own a Car of Fresno, for the purchase of a 2007 Toyota FJ Cruiser. The contract granted Own a Car a security interest in the vehicle as collateral for the indebtedness created by the retail installment contract. Own a Car immediately assigned the contract to Wachovia Dealer Services, Inc. The lien was properly perfected under California law via notation in the records of the California Secretary of State.

In April, 2010, after relocating to Illinois, the DEBTOR sought to have the vehicle retitled in Illinois, by application submitted to the Illinois Secretary of State. Between the time that the lien was created and perfected in California in 2008 and the DEBTOR'S application for issuance of an Illinois title in April, 2010, Wachovia Corporation and its subsidiaries, including Wachovia Dealer Services, Inc., were acquired by Wells Fargo & Company by merger. The merger was approved by the Federal Reserve Board in October, 2008, and was effectively completed by December 31, 2008. The merger did not affect the separate corporate status of Wachovia Dealer Services, Inc., and the corporation continued to operate with that same corporate name even after the merger.

On December 1, 2009, Wachovia Dealer Services, Inc.'s board of directors approved an amendment to the Articles of Incorporation changing its corporate name to Wells Fargo Dealer Services, Inc., effective as of March 20, 2010. The following year, Wells Fargo Dealer Services, Inc., merged with and into Wells Fargo Bank, N.A., effective as of July 1, 2011.

On the application for Illinois title, the DEBTOR listed the lienholder as Wachovia Dealer Services, Inc., with its California address, causing the Illinois Secretary of State to send a letter addressed to Wachovia Dealer Services, Inc., advising it of the application and requesting the vehicle title. The letter, providing blank spaces for "lienholder name" and "lienholder address," states that "unless otherwise specified in the spaces below, the lienholder information will be recorded on the certificate of title as it appears in the addressee area of this letter." The addressee is identified as Wachovia Dealer Services, POB 997517, Sacramento, CA 95899. There is no dispute that this mailing address continued to be effective for Wells Fargo Dealer Services, Inc., after the corporation changed its name from Wachovia Dealer Services, Inc.

The corporation's employee holding the title Operations Processor, requested the title transfer documentation from the California Department of Motor Vehicles. Since California utilizes a paperless system of vehicle titling, Wells Fargo Dealer Services, Inc., even though it held a perfected lien, was not in possession of a certificate of title. The California DMV first issued a paper title, with the lienholder shown as Wachovia Dealer Services, when it received the Operations Processor's request. The Operations Processor determined that it was not necessary to provide the lienholder's current corporate name to the Illinois Secretary of State, so she forwarded the California certificate of title and

returned the letter leaving the space for "lienholder name" blank. Accordingly, the Illinois certificate of title was issued on May 26, 2010, identifying the lienholder as Wachovia Dealer Services, PO Box 997517, Sacramento, CA 95899-7517.

Prior to the name change from Wachovia Dealer Services, Inc., to Wells Fargo Dealer Services, Inc., the corporation's vice president – collateral manager, pursuant to an established policy, notified the relevant state agencies of the impending change. She sent duplicate letters dated February 5, 2010, to the Illinois Secretary of State and the Vehicle Services Department advising of the name change to Wells Fargo Dealer Services, Inc., effective April 1, 2010, while retaining the same mailing address. In her declaration, she declares that a state employee advised her that no further documentation was needed to effect the lienholder name change, but that a letter would have to be submitted when a release of lien was processed affirming the then current name of the lienholder.

The DEBTOR filed a Chapter 7 petition on June 24, 2013, scheduling the vehicle as an asset of his bankruptcy estate. The original schedules reflected a value of $9,000 and a balance due WELLS FARGO of $8,998, on its secured claim. The DEBTOR later amended Schedule B, reflecting an increased value of $15,275. The TRUSTEE filed a motion to compel turnover of the vehicle, which was granted by the Court. The TRUSTEE, with the consent of WELLS FARGO, sold the vehicle for $9,700, netting proceeds of $8,642, after payment of the auctioneer's commission and expenses. The TRUSTEE continues to hold those funds. The payoff balance to WELLS FARGO is represented to be approximately $6,000.

The TRUSTEE filed this complaint against WELLS FARGO to avoid its claimed lien under section 544 and to recover payments totaling $1,786.32, which were made by the

4

DEBTOR in the ninety-day period preceding the filing of the bankruptcy petition. The TRUSTEE asserts that WELLS FARGO'S security interest in the vehicle was not properly perfected under the Illinois Vehicle Code because the certificate of title reflects Wachovia Dealer Services, Inc., as the lienholder. Both the TRUSTEE and WELLS FARGO moved for summary judgment. WELLS FARGO, maintaining that it followed proper procedures, contends that despite its former name on the title, its lien continues to be perfected.

## **ANALYSIS**

Under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 344, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, the court may not make credibility determinations, weigh the evidence, or choose from among different reasonable inferences that might be drawn from the evidence. *Paz v. Wauconda Healthcare & Rehabilitation Centre, LLC*, 464 F.3d 659, 664 (7th Cir. 2006). The court must construe the evidence and all inferences that can reasonably be drawn therefrom in the light most favorable to the nonmoving party. *In re Chambers*, 348 F.3d 650, 654 (7th Cir. 2003). Only disputes over facts that might affect the outcome under governing law will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Issues of non-material fact will not prevent summary judgment. *In re 1031 Tax Group, LLC*, 439 B.R. 47

5

(Bankr.S.D.N.Y. 2010). When parties file cross motions for summary judgment, the court must consider each motion separately, drawing all inferences in favor of each non-moving party in turn. *Rhino Linings USA, Inc. v. Harriman*, 658 F.Supp.2d 892, 896 (S.D.Ind. 2009).

Upon commencement of a bankruptcy case, a trustee acquires the status of a hypothetical judicial lien creditor and may avoid any lien or encumbrance on the debtor's property that such creditor could avoid under state law. 11 U.S.C. § 544(a). While federal law empowers the trustee with avoidance rights, the issues of perfection and priority are determined by applicable state law. *Matter of Wheaton Oaks Office Partners Ltd. Partnership*, 27 F.3d 1234, 1244 (7th Cir. 1994). Under Illinois law, an unperfected security interest in a vehicle is subordinate to the rights of a lien creditor and subject to avoidance by the trustee. *In re Church*, 206 B.R. 180, 183 (Bankr.S.D.Ill. 1997)(citing *United States v. Rotherham*, 836 F.2d 359, 365-65 (7th Cir. 1988)).[1]

Section 3-202 of the Illinois Vehicle Code, 625 ILCS 5/3-202, which governs the perfection of security interests in motor vehicles provides, in pertinent part:

> (b) A security interest is perfected by the delivery to the Secretary of State of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the required fee. The security interest is perfected as of the time of its creation if the delivery to the Secretary of State is completed within 30 days after the creation of the security interest or receipt by the new lienholder of the existing certificate of title from a prior lienholder or licensed dealer, otherwise as of the time of the delivery.

---

[1] As Judge Meyers noted in *Church*, section 3-202(a) provides that an unperfected security interest in a vehicle is not valid against subsequent transferees or lienholders of the vehicle. The Uniform Commercial Code, which governs the priority of competing security interests, provides that an unperfected security interest is subordinate to the rights of a lien creditor. 810 ILCS 5/9-317(a)(2). Section 9-102(a)(52)(C) defines a "lien creditor" to include "a trustee in bankruptcy from the date of the filing of the petition."

(c) If a vehicle is subject to a security interest when brought into this State, the validity of the security interest is determined by the law of the jurisdiction where the vehicle was when the security interest attached, subject to the following:

    1. If the parties understood at the time the security interest attached that the vehicle would be kept in this State and it was brought into this State within 30 days thereafter for purposes other than transportation through this State, the validity of the security interest in this State is determined by the law of this State.

    2. If the security interest was perfected under the law of the jurisdiction where the vehicle was when the security interest attached, the following rules apply:

        (A) If the name of the lienholder is shown on an existing certificate of title issued by that jurisdiction, his security interest continues perfected in this State.

        (B) If the name of the lienholder is not shown on an existing certificate of title issued by that jurisdiction, a security interest may be perfected by the lienholder delivering to the Secretary of State the prescribed notice and by payment of the required fee. Such security interest is perfected as of the time of delivery of the prescribed notice and payment of the required fee.

    3. If the security interest was not perfected under the law of the jurisdiction where the vehicle was when the security interest attached, it may be perfected in this State; in that case perfection dates from the time of perfection in this State.

Reciting the general rule that a corporation must conduct its business under its legal corporate name and that it may not assume a different name unless it complies with procedures permitting the use of an assumed name, the TRUSTEE contends that she is entitled to summary judgment on her complaint based on the fact that WELLS FARGO is not listed on the title as a lienholder.

Relying on the principle of law that a mere name change has no effect upon the identity of a corporation, WELLS FARGO asserts that even if Wells Fargo Dealer Services, Inc., had used its former Wachovia name without authorization, the status of Wells Fargo Dealer Services, Inc., as a perfected lienholder would not be lost. WELLS FARGO maintains that prior to the merger with Wells Fargo Bank, Wells Fargo Dealer Services, Inc., was explicitly authorized to use the assumed name "Wachovia Dealer Services." In support of its contention, WELLS FARGO submits a Corporation File Detail Report obtained from the Secretary of State's office for Wells Fargo Dealer Services, Inc., listing "Wachovia Dealer Services" and "WFS Financial" as assumed names, both shown as "inactive."

Noting that under Illinois law, a lien on a vehicle is properly perfected by the delivery to the Secretary of State of the existing certificate of title, an application for a certificate of title containing the name and address of the lienholder and the required fee, WELLS FARGO argues that it is entitled to summary judgment on the TRUSTEE'S complaint, notwithstanding the misnomer on the Illinois certificate of title, based on its compliance with the statutory procedures for perfection set forth in the Illinois Vehicle Code. WELLS FARGO further argues that the use of the corporation's former name on the Illinois certificate of title is irrelevant, because they were not separate entities but one and the same. In addition, WELLS FARGO argues that absent a requirement in the Vehicle Code that requires a corporation to take action as a result of a change in corporate name, none should be implied.

In response, the TRUSTEE contends that WELLS FARGO'S claim of perfection based

8

on sections 3-202(b) and (c)(2)(A), premised upon delivery of the required documents to the Secretary of State, specifically an application containing the name and address of the lienholder or a notice from the lienholder, cannot prevail. As evidence that the documents delivered by Wells Fargo Dealer Services, Inc., were deficient, the TRUSTEE points to the letter received from the Secretary of State, addressed to Wachovia Dealer Services, which provided spaces for both "lienholder name" and "lienholder address," advising that unless otherwise specified, the lienholder information would be recorded on the title as it appeared in the addressee section of the letter. Those lines were left blank when the letter was returned by the Operations Processor. According to the TRUSTEE, the misidentification of Wachovia Dealer Services, Inc., on the certificate of title was a fundamental defect, resulting in the loss of its properly perfected status.

In her supplemental response, the TRUSTEE disputes whether Wells Fargo Dealer Services, Inc., was authorized to continue to use the assumed name of "Wachovia Dealer Services," noting that the document submitted by WELLS FARGO was undated and unauthenticated.

As an express exception to the coverage of Article 9 of the Uniform Commercial Code, perfection of a security interest in a motor vehicle is governed by state vehicle codes or other certificate of title statutes providing for a security interest to be indicated on the certificate. 810 ILCS 5/9-311(a). Virtually all states have enacted statutes that require lien notation on a certificate of title as the means of perfecting a security interest in a motor vehicle. 2 Barkley Clark & Barbara Clark, *The Law of Secured Transactions Under the Uniform Commercial Code,* ¶ 12.03[1] (3d ed. 2012).

Notation of a lien on a certificate of title serves the same purpose as a filed financing

9

statement under Article 9, namely, to give notice of a party's interest. *In re Microband Companies, Inc.,* 135 B.R. 2, 4 (Bankr.S.D.N.Y. 1991). As such, strict compliance is not required by courts, so that substantial compliance is sufficient to the extent that errors are not seriously misleading. *Id.*

This Court adopted the substantial compliance standard in *In re My Type, Inc.,* 407 B.R. 329 (Bankr.C.D.Ill. 2009), which had been applied by the Seventh Circuit Court of Appeals to an earlier version of the Illinois Vehicle Code in *Matter of German,* 285 F.2d 740 (7th Cir. 1961). The application for title in question in *German* mistakenly failed to state the date of the security agreement, which was required by the statute then in effect. When the vehicle's owner filed for bankruptcy relief, the trustee challenged the lien as unperfected. Rejecting the trustee's challenge, the court reasoned that the document "was sufficient to put any subsequent purchaser, creditor, or lien claimant of the Bankrupt on notice of the fact of the lien and upon inquiry as to all salient facts." *Id.* at 742-43.

It is now well settled that certificate of title perfection statutes are construed in light of their purpose of providing inquiry notice to subsequent purchasers and creditors of the existence of a prior lien. *In re Charles,* 323 F.3d 841 (10th Cir. 2003); *In re Load-It, Inc.,* 774 F.2d 1077 (11th Cir. 1985); *In re Circus Time, Inc.,* 641 F.2d 39 (1st Cir. 1981); *In re Fields,* 351 B.R. 887, 891-93 (Bankr.S.D.Ohio 2006). Under the inquiry notice standard, perfection requirements are generally satisfied when a reasonably diligent person is placed on notice of a prior interest in the collateral. *Microband Companies,* 135 B.R. at 4.

The requirement that the name of the lienholder be shown on a certificate of title may be contrasted with the UCC Article 9 requirement that the debtor be identified by the proper name on a financing statement, where the exactness of the debtor's name is critical

10

because the search logic used by state filing offices relies upon the correct name.[2] A rule of leniency (in the form of the inquiry notice standard) may be applied to a lienholder's name on a certificate of title because vehicle titles in the Secretary of State's office are not indexed by lienholder name – so an error in the creditor's name will not prevent a reasonably diligent subsequent creditor from finding the official record of the title and discovering that the title discloses an encumbrance.[3]

The foregoing rationale was applied by the court in *In re Farley*, 387 B.R. 751 (Bankr.S.D.Ohio 2008), where several certificates of title contained incomplete or abbreviated lienholder names: "ESB" for Eaglemark Savings Bank; "National City" for National City Bank; "HSBC" for HSBC Auto Finance, Inc.; "Wells Fargo Financial" for Wells Fargo Financial Acceptance Ohio 1, Inc.; and "Fifth Third" for Fifth Third Bank. The chapter 7 trustee filed actions under section 544(a) to avoid the security interests as unperfected, arguing that the identity of the lienholders on the titles was seriously misleading. The address listed on the titles for each lienholder was a correct and valid address.

The trustee relied upon decisions holding that a trustee may avoid a security interest due to a relatively minor mistake in identifying the name of the debtor on a financing statement. Finding those decisions to be inapposite, the court concluded that the use of the

---

[2] A financing statement containing errors may be effective so long as the errors do not make it "seriously misleading." A financing statement that fails to provide the correct name, exactly, of a debtor is deemed to be seriously misleading, unless a search using the correct name would nonetheless disclose the financing statement. *See* 810 ILCS 5/9-506.

[3] The TRUSTEE does not contend that a subsequent creditor would somehow be prejudiced because the lienholder is identified on the title by its former corporate name. In advocating a statutory interpretation that does not prevent actual harm, the TRUSTEE'S arguments are legalistic in nature.

11

incomplete or abbreviated names, along with the correct addresses, satisfied the inquiry notice standard by providing the trustee "with the means necessary to identify the holders of the security interests." 387 B.R. at 758. Granting summary judgment for the creditors, the court rejected the trustee's argument that because the abbreviated versions of the creditors' names were not authorized assumed names, their use was invalid, noting that invalidating a transaction was not a remedy provided under state law for a corporation's use of an unauthorized name. The court also distinguished the facts of its cases involving an incorrect name for the correct lienholder, from decisions avoiding a lien where the title mistakenly listed the name and address of an entirely different entity that had no connection to the transaction.[4]

This Court agrees with the reasoning and result in *Farley*. *Farley* exemplifies the predominant view that inaccuracies in the name of a lienholder shown on a certificate of title, at least where the address is valid, will not allow a bankruptcy trustee to avoid the lien under section 544(a). It is also this Court's belief that these principles are applicable under Illinois law and will be adopted by the Illinois Supreme Court if and when it has occasion to address the issue.

In the case at bar, there is no question that the corporate entity known as Wachovia Dealer Services, Inc., changed its name to Wells Fargo Dealer Services, Inc., and that the name change became effective prior to the time the vehicle was retitled in Illinois. This is not a case, however, where the wrong corporate entity was mistakenly listed as lienholder.

---

[4] *See In re Leach,* 206 B.R. 903 (Bankr.M.D.Tenn. 1997) and *In re Webb,* 106 B.R. 517 (Bankr.E.D.Tenn. 1989).

There is no question that the address listed for the lienholder on the Illinois title continued to be a valid address despite the name change. Since the address was valid and the name was the one formerly used by the same corporation, a fact the corporation's employees would certainly have been aware of, an inquiry made to that address would have enabled a reasonably diligent creditor to ascertain the correct information about the status of the lien. Therefore, the inquiry notice standard is satisfied.

Asserting that there is a disputed question of fact as to whether Wells Fargo Dealer Services, Inc., was authorized to continue to use its former corporate name after March 20, 2010, the TRUSTEE asserts that if use of the old name was not authorized, the designation on the title is invalid and the lien is avoidable. For reasons similar to those cited by the court in *Farley,* even if the continued use of the former name was not authorized, the TRUSTEE'S invalidity argument must be rejected. The Illinois Business Corporation Act of 1983 contains no provision to the effect that a corporation's actions using a former corporate name not authorized to be used as an assumed name are void. To the contrary, the statute provides that no act of a corporation shall be invalid by reason of the fact that the corporation was without capacity or power to do such act.[5]  805 ILCS 5/3.15.

More fundamentally, the TRUSTEE misconstrues the context, and hence the effect, of the retitling process that occurred in April and May, 2010. The creditor corporation held a perfected lien on the vehicle under California law. When the DEBTOR moved to Illinois, the lien remained perfected without any action by the lienholder. 625 ILCS 5/3-202 (c)(2)(A). The intervening name change to Wells Fargo Dealer Services, Inc., did not

---

[5]The record does not reflect the state in which the corporation was incorporated, which would provide the governing corporate law. As the TRUSTEE refers to Illinois law, so does the Court.

13

require the corporation to take any action to preserve its perfected status. Moreover, it was the DEBTOR, not WELLS FARGO, who initiated the retitling process.[6] WELLS FARGO was simply responding to a request from the Illinois Secretary of State to provide the California vehicle title so that the DEBTOR'S request could be processed. Complying with that request, WELLS FARGO caused the California title to be forwarded to the Illinois Secretary of State. The fact that the Illinois Secretary of State's letter of April 14, 2010, contained spaces for a different lienholder name and lienholder address is superfluous. Nothing in the statute required WELLS FARGO to update its name. That WELLS FARGO chose to leave those spaces blank does not render its perfected security interest unperfected. WELLS FARGO was not acting as a creditor attempting to perfect a lien. It already had a perfected lien and was simply accommodating the DEBTOR'S request to retitle the vehicle in Illinois. WELLS FARGO was not conducting business under an unauthorized name merely because it chose not to update its name coincident with the DEBTOR'S retitling application.

As the holder of a pre-exiting security interest created and perfected in another state, WELLS FARGO'S perfected status continued without any action on its part under 625 ILCS 5/2-202(c)(2)(A). To the extent the TRUSTEE argues that the prior name change caused the lienholder's name to no longer be validly shown on the California certificate of title, thereby triggering the need of the lienholder to take action to perfect under 625 ILCS 5/3-

---

[6] A person who becomes an Illinois resident who owns a vehicle not titled in Illinois is required to retitle the vehicle in Illinois. *See* 625 ILCS 5/3-101. The owner is responsible for submitting an application for a certificate of title on the form prescribed by the Secretary of State and must identify any lienholder. *See* 625 ILCS 5/3-104(c)(2). None of the statutory provisions dealing with the issuance or reissuance of certificates of title, sections 5/3-100 through 5/3-118.1, deals with perfection of a lien or imposes any duty on a lienholder to take any particular action to maintain perfection of a preexisting lien.

14

202(c)(2)(B), this Court disagrees. Section 3-202(c)(2)(B) applies to situations where a lien is perfected under the law of the other jurisdiction in a manner other than by notation on the certificate of title. Since the State of California issued a certificate of title with the lien noted on it, section 3-202(c)(2)(B) does not apply. For the reasons stated above, it matters not that the lienholder's name on the California title is the corporation's former name.

None of the Illinois Motor Vehicle Code provisions dealing with security interests, sections 5/3-201 through 5/3-210, requires a lienholder that changes its name to take any action to maintain perfection. The statute does deal with the situation where a lienholder assigns its security interest to a different entity. In that event, the security interest remains perfected even though the certificate of title shows the assignor's name as lienholder. *See* 625 ILCS 5/3-204(b). Bankruptcy courts uniformly hold that the assignee of a properly perfected security interest is not required to have its name noted on the certificate of title as lienholder to prevail against a bankruptcy trustee. *In re McMullen,* 441 B.R. 144 (Bankr.D.Kan. 2011); *In re Scott,* 427 B.R. 123 (Bankr.S.D.Ind. 2010); *In re Fields,* 351 B.R. 887 (Bankr.S.D.Ohio 2006); *In re Wuerzberger,* 284 B.R. 814 (Bankr.W.D.Va. 2002); *In re Field,* 263 B.R. 323 (Bankr.D.Idaho 2001). It would be shockingly anomalous if a secured party could lose its perfected status upon changing its name while an assignee unrelated to the named lienholder was protected. Such an absurd result is not compelled or even suggested by Illinois law.

Accordingly, this Court holds that WELLS FARGO held a properly perfected lien in the DEBTOR'S vehicle on the date of the filing of the petition in bankruptcy. Its lien is not avoidable by the TRUSTEE under section 544 and the prepetition payments it received

are not avoidable under section 547.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###